IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **CELTIC BANK CORPORATION**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:12-CV-1110-L** |
| | § | |
| **IMAGE PLUS DENTAL DESIGN, LLC,** | § | |
| **RANDY J. WINANS, and JENNIFER** | § | |
| **WINANS**, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Plaintiff's Motion for Entry of Default Judgment against Image Plus Dental Design, L.L.C., Randy J. Winans, and Jennifer Winans (collectively, "Defendants"), filed July 9, 2012. After careful consideration of the motion, record, and applicable law, the court **grants** Plaintiff's Motion for Entry of Default Judgment.

**I.     Factual Background**

Celtic Bank Corporation ("Plaintiff" or "Celtic Bank") filed this action against Defendants Image Plus Dental Design, LLC, Randy J. Winans, and Jennifer Winans (collectively, "Defendants") on April 10, 2012. Plaintiff's Original Complaint (the "Complaint") sets forth the following allegations against Defendants:

> 7.    On May 30, 2006, Randy J. Winans ("R. Winans") and Image Plus Dental Design, L.L.C. ("Image Dental") jointly executed a promissory note (the "Note") in the original principal amount of $1,750,000.00 payable to First National Bank of Arizona. A true and correct copy of the Note is attached hereto as **Exhibit "I"** and is incorporated by reference.
>
> 8.    On May 30, 2006, Image Dental additionally executed a Security Agreement Assignment of Leases and Rents, and Financing Statement (hereinafter the "Deed of Trust") thereby securing amounts due and owing under

**Memorandum Opinion and Order – Page 1**

the Note. A true and correct copy of the Deed of Trust is attached hereto as **Exhibit "2"** and is incorporated by reference. The Deed of Trust created a lien on a tract of Real Property in Dallas County, Texas more fully described in EXHIBIT "A" to the Deed of Trust.

9. On May 30, 2006, Jennifer Winans ("J. Winans") signed an unconditional guarantee (the "J. Winans Guarantee") in favor of First National Bank of Arizona, thereby guaranteeing all amounts due and owing under the Note. A true and correct copy of the J. Winans Guarantee is attached hereto as Exhibit "3" and is incorporated by reference.

10. On May 30, 2006, Image Dental and R. Winans additionally executed a Commercial Security Agreement (the "Security Agreement") in favor of First National Bank of Arizona, thereby further securing all amounts due and owing under the Note. A true and correct copy of the Security Agreement is attached hereto as Exhibit "4" and is incorporated by reference.

11. Bank of Arizona subsequently failed and was placed into an FDIC Receivership. Ultimately, the FDIC sold the entire loan and assigned all of the documents encompassing the loan, including but not limited to Exhibits "1" through "4", to Celtic. Celtic is the owner and holder of the Note and assignee and owner of the Unconditional Guarantee herein referenced, the Security Agreement, and the Deed of Trust.

12. Thereafter, there was a default under the Note by virtue of the cessation of monthly installment payments as they became due and owing. By letter of November 14, 2011, (the "November 14th Letter") Celtic Bank made demand on all of the Defendants for the full arrearage amount of $249,644.08 that reflected unpaid installments for the period of July 2010 through October 2011. A true and correct copy of the November 14th Letter is attached hereto as Exhibit "5" and is incorporated by reference.

13. Thereafter, the Defendants failed to cure the default by paying the arrearages. Accordingly, by letter dated December 9, 2011, (the "December 9th Letter"), Celtic served Notice of Acceleration and a Notice of Foreclosure Sale on all Defendants. A true and correct copy of the December 9th Letter and the accompanying Notice of Foreclosure Sale that was enclosed are collectively attached as **Exhibit "6"** and are incorporated by reference. Thereafter, the foreclosure sale on the property occurred by trustee's sale of January 3, 2012, and the Property was acquired by Celtic Bank as the highest bidder at $200,000.00. True and correct copies of the Foreclosure Sale Deed and the Trustee's Sale Affidavit are collectively attached hereto as **Exhibit "7"** and are incorporated by reference.

14. After all just and lawful offsets, there remains due and owing on the Note the principal amount of $1,597,672.77 along with accrued interest of $141,540.37

with interest continuing to accrue at the daily rate of $240.75 constituting an interest rate of 5.5%. Additionally, there are various costs incurred in conjunction with the preservation in foreclosure on the property in the amount of $48,677.31 constituting, as of March 29, 2012 the total of $1,800,189.75.

15. All conditions precedent have been fulfilled.

Pl.'s Orig. Compl. ¶¶ 7-14.

Plaintiff states that after all offsets the amount as of March 29, 2012, remaining due is $1,597,672.77, along with prejudgment interest at the rate of 5.5% on the principal ($240.75 per diem) until the date judgment is issued by the court. Celtic Bank also seeks $48,677.31 for various costs incurred in conjunction with the preservation and foreclosure of real property collateral. Celtic Bank further seeks reasonable attorney's fees in connection with this action and the foreclosure in an amount of at least $50,000. Plaintiff further contends that by virtue of the execution of the "Note" and Unconditional Guarantee, the foreclosure sale, and various costs incurred, all Defendants are jointly and severally liable for the relief Plaintiff seeks. Pl.'s Orig. Compl. ¶¶ 17-18.

On July 9, 2012, the clerk's office entered entries of default against all Defendants. The entries all stated that the Original Complaint had been served on each Defendant and that each failed to answer or otherwise defend within the time permitted under law. The entries also reflect that Plaintiff has, through affidavit or otherwise, established this failure as to each Defendant.

## II. Discussion

### A. Liability

The record reflects that Defendants were duly served and that they have not answered or otherwise defended this action. Further, no Defendant is a minor, a member of the United States Armed Services, or an incompetent person.

Based on the allegations of the Complaint, which are well-pleaded and accepted as true by the court, the exhibits attached to the Complaint, and the Amended Affidavit of Brian Zern and exhibits attached thereto, the court determines that Defendants failed to make the required monthly installments on the Note and therefore defaulted. Further, the court determines that Defendants failed to cure the default and that Celtic Bank is entitled to recover appropriate damages for the deficiency as set forth in Count 1 of the Complaint.

### B. Damages and Prejudgment Interest

By way of its Proposed Default Judgment, Plaintiff seeks damages from Defendants, jointly and severally, for the principal amount of $1,597,672.77 and all accrued prejudgment interest of $162,726.37 through June 18, 2012, which is at a rate of 5.5% per annum ($240.75 per diem); and from this date at a rate of $240.75 per day until judgment is entered. Plaintiff also seeks costs incurred in conjunction with its preservation and foreclosure of property collateral in the amount of $65,147.11. Further, Celtic Bank seeks $10,000 as reasonable attorney's fees incurred in the preservation of the real property collateral and the foreclosure on such property, and it seeks $8,000 in attorney's fees and cost for prosecuting this action. The court will address the issue of attorney's fees in the following section.

While Celtic Bank is entitled to damages, prejudgment interest, costs incurred in conjunction with the foreclosure and collateral property, and attorney's fees and certain

expenses, the court disagrees with the amount of recovery requested in Plaintiff's Proposed Default Judgment. The court agrees that the principal amount is $1,597,672.77, and this is the amount on which the court will compute prejudgment interest.

This is a diversity case, and prejudgment interest is calculated under state law in diversity cases. *Boston Old Colony Ins. Co. v. Tiner Assocs. Inc*., 288 F.3d 222, 234 (5th Cir. 2002). In Texas, a claim for prejudgment interest may be based upon general principles of equity or an enabling statute. *Cavnar v. Quality Control Parking, Inc*., 696 S.W.2d 549, 552 (Tex. 1985). Under both the common law and the Texas Finance Code, prejudgment interest begins to accrue on the earlier of: (1) 180 days after the date a defendant received written notice of a claim, or (2) the date suit is filed. Tex. Fin. Code Ann. § 304.104 (West 2006). Prejudgment interest stops accruing on the date prior to entry of judgment and is computed as simple interest. *Id.* Prejudgment interest is awarded to compensate fully the injured party, not to punish the defendant, and is considered compensation allowed by law as additional damages for lost use of the money due between the accrual of the claim and the date of judgment. *See Johnson & Higgins, Inc. v. Kenneco Energy, Inc*., 962 S.W.2d 507, 528 (Tex. 1998).

The court agrees that the rate of 5.5% applies to prejudgment interest in this case; however, it is unclear from the record when Defendants received written notice of Plaintiff's claim. The court does not consider the letter of November 14, 2011, to constitute notice of a claim; however, the court does consider the letter of December 9, 2011, to Defendants as a notice of claim. This is so because the letter specifically makes demand for the full outstanding balance of the loan, interest due and other costs and expenses chargeable to Defendants in connection with the loan. As the date the lawsuit was filed is less than 180 days, the court determines that prejudgment interest is calculated from the date this action was filed on April 10, 2012, to the

**Memorandum Opinion and Order – Page 5**

date of entry of the judgment. Therefore, the amount of prejudgment interest on $1,597,672.77 is **$74,630.95**, not the $162,726.37 amount requested by Celtic Bank.[*] Thus, Celtic Bank is entitled to a total of **$1,672,303.72** as principal and prejudgment interest.

Celtic Bank also seeks $65,147.11 for various costs and expenses incurred in conjunction with the preservation and foreclosure on the collateral property. This amount is documented by affidavit, and the court will allow recovery of $65,147.11 along with prejudgment interest at the rate of 5.5% from the date of the filing of this action to the date of judgment. Recovery on these costs and expenses totals **$68,190.28** ($65,147.11 + $3,043.17 prejudgment interest).

### C. Attorney's Fees and Expenses

With respect to attorney's fees, Celtic Bank has produced documentation that it incurred attorney fees and paralegal fees of $14,023.50 and related expenses of $2,569.26 for a total of $16,592.76 in connection with preserving the real estate collateral in a lawsuit for unpaid taxes. The court has reviewed the documentation and the affidavit of Mr. Andrew F. Emerson and concludes that the attorney's fees requested are reasonable and that services rendered were necessary with respect to the lawsuit involving the unpaid taxes. The court will allow recovery of $16,592.76 along with prejudgment interest at the rate of 5.5% from the date this action was filed until the date of judgment. Thus, the total amount to be recovered by Celtic Bank is **$17,367.85** ($16,592.76 + $775.09 prejudgment interest).

---

[*] Celtic Bank does not explain or set forth its methodology for seeking substantially more than this amount of prejudgment interest on the principal of $1,597,672.77. The court also notes that the record is not clear in some instances as to how other damages were computed. In those instances where the basis for an amount sought was unclear, the court did not make an award; however, in instances where the amount was specifically stated or the court could make reasonable inferences, the court allowed the amount requested by Celtic Bank.

**Memorandum Opinion and Order – Page 6**

Celtic Bank also seeks attorney's fees for the time expended on the prosecution of this action. Although Celtic Bank did not provide the court with any time records relating to the amount of time expended and the services rendered, the court is able to review the docket sheet and determine which documents were filed in this case. The court has granted default judgment in a number of cases and is familiar with what it takes to present a proper motion for default judgment. Based on its experience in setting fees in other similar cases, a review of the documents filed in this case, and Mr. Emerson's affidavit, the court determines that the requested fee of $8,000 constitutes a reasonable request and will allow Celtic Bank to recover **$8,000**, as it reflects a reasonable charge for the reasonable and necessary services rendered to prosecute this action. No prejudgment interest will be allowed on this amount.

### D. Postjudgment Interest

Celtic Bank requests postjudgment interest at the highest lawful rate. With respect to an award of postjudgment interest, federal law applies on "any judgment in a civil case recovered in a district court . . . *including actions based on diversity of citizenship.*" *Travelers Ins. Co. v. Liljeberg Enters., Inc*. 7 F.3d 1203, 1209 (5th Cir. 1993) (citation and internal quotation marks omitted). A court awards postjudgment interest pursuant to 28 U.S.C. § 1961. Accordingly, postjudgment interest will accrue on the judgment at the applicable federal rate, which is currently **.15 percent per annum**.

## III. Conclusion

For the reasons herein stated, the court **grants** Plaintiff's Motion for Entry of Default Judgment. Accordingly, the court will issue a default judgment against Defendants, jointly and severally, in accordance with this opinion and by separate document pursuant to Federal Rule of Civil Procedure 58.

**It is so ordered** this 8th day of February, 2013.

_____
Sam A. Lindsay
United States District Judge